IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| GEORGIA P. SMITH, | ) | CASE NO. 4:11CV00250 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| MICHAEL J.ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Defendant. | ) | |

Plaintiff Georgia P. Smith ("Smith") seeks judicial review of the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for social security disability benefits.  Doc. 1.  This Court has jurisdiction pursuant to 42 U.S.C. § 405(g). This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2(b)(1).  Smith's arguments relate entirely to the Listings,[1] specifically her argument that she should have been found disabled under Listing 12.05, which pertains to the impairment of mental retardation.[2]  Doc. 14 at 4-7.[3]  Smith's brief in this action appears to be the first time she has argued that she is disabled due to mental retardation.[4]

For the reasons stated below, the Commissioner's decision should be **AFFIRMED**.

---

[1] The Listing of Impairments (commonly referred to as Listing or Listings) is found in 20 C.F.R. pt. 404, Subpt. P, App. 1, and describes impairments for each of the major body systems that the Social Security Administration considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.  20 C.F.R. § 404.1525.

[2]  20 C.F.R. pt. 404, Subpt. P, App. 1.

[3] Plaintiff's Brief does not comply with Local Rule 10.1 because the pages are not numbered consecutively.  Page references to Plaintiff's Brief herein refer to the docket page numbers for Doc. 14 (Plaintiff's Brief).

[4] The Commissioner notes Smith's failure to claim mental retardation in the proceedings before the Social Security Administration  (Doc. 16 at 12), a point that Smith has not disputed.

## I.  Procedural History

Smith has filed numerous applications for Supplemental Security Income Benefits ("SSI").[5] Tr. 10, 30-31, 78-80, 131-136.  She filed the application reviewed by the ALJ on December 13, 2007,[6] and the ALJ indicated that he was combining with that claim the application that Smith filed on February 22, 2007.  Tr. 10.  The application alleged a disability onset date of November 1, 2007[7] due to bi-polar disorder, major depression, schizophrenia, back and neck pain and high blood pressure.  Tr. 84-86, 205.  After initial denials by the state agency (Tr. 84-91), Smith requested a hearing (Tr. 93), and an administrative hearing was held before Administrative Law Judge George A. Mills, III ("ALJ") on February 1, 2010.  Tr. 28-75.

In a decision dated March 15, 2010, the ALJ determined that Smith had not been under a disability since December 13, 2007, the date the application was filed.  Tr. 21-22.  Smith requested review of the ALJ's decision by the Appeals Council on April 12, 2010. Tr. 4-5.  On December 13, 2010, the Appeals Council denied Smith's request for review, making the ALJ's decision the final decision of the Commissioner.  Tr. 1-3.

## II. Evidence

**A.** **Personal and Vocational Evidence**

Smith was born on June 3, 1968, and was forty-one years of age at the time of the hearing.  Tr. 37.  She testified that she was married but had been separated from her husband for eight years and was residing with her fiancé at the time of the hearing before the ALJ.  Tr. 38-39.

---

[5] Smith's Brief refers to an application date of January 7, 2008.  Doc. 14  at 1.  Defendant's Brief refers to an application date of December, 2007.  Doc. 16 at 1.  The record includes December 13, 2007, and January 7, 2008, applications.  Tr. 79-80, 134-136.

[6] Smith's Brief refers to a different filing date in her Brief, i.e., January 7, 2008.  Doc. 14 at 1.  However, Plaintiff does not challenge this specific ALJ finding.

[7] Both Smith and the Commissioner refer to an alleged onset date of November 1, 2007.  Doc. 14 at 1; Doc. 16 at 1.

She has two living adult children and she had another child who passed away about ten years ago.  Tr. 38, 53.

Smith finished the tenth grade.  Tr. 40.  She testified that she can read and write.  Tr. 40.  She also testified that she cannot comprehend what she reads but, if something is read to her, she is able to follow it.  Tr. 40, 57.  She can perform simple math sufficiently well to allow her to shop for herself.  Tr. 40-41.  She never received her GED.  Tr. 40.  However, she received a State Test Nurses Aid ("STNA") certificate after attending JVS in Columbiana County.  Tr. 41.  As a nurse's aid, Smith worked in nursing homes and assisted medically handicapped and elderly individuals with daily personal needs, i.e., bathing, shaving, and getting up and down.  Tr. 44.  She testified that she did not pass out medication to patients.  Tr. 47.  At the time of the hearing, Smith had not been certified for about 10 years.  Tr.  41-42.    She worked for about one year after her son died until her father died.  Tr. 42.  She last worked in 2000.  Tr. 42.

Smith testified that she never had a driver's license.  Tr. 39.   She smokes about a pack of cigarettes per day and smokes marijuana about once a week.  Tr. 59-60.

**B.     Medical Evidence[8]**

    **1.     School Psychological Evaluation**

In 1984, more than 20 years before the application in this case, school psychologist Nicholas Bernard ("Bernard") completed a psychological evaluation of Smith.  Tr. 235-238.  The reason for the referral was re-evaluation "as per state standards for retesting students enrolled in special education programs."  Tr. 235.  Smith was fifteen years old at the time of the evaluation.

---

[8] Because Smith's challenge relates to her mental condition, the medical evidence summarized herein is generally limited to medical records pertaining to her mental health treatment and assessments.

3

Tr. 235. IQ tests were administered with the following results: Verbal Scale IQ – 69;[9] Performance Scale IQ - 87; and Full Scale IQ – 76.[10] Tr. 236. Bernard noted that the Full Scale IQ score of 76 fell "within the Borderline classification of intellectual potential." Tr. 238. He also noted that there was an 18 point discrepancy between Smith's Verbal and Performance Scale IQs. Tr. 238. He opined that the discrepancy "suggests that her perceptual organizational skills are currently significantly better developed than her skills of verbal comprehension." Tr. 238. Bernard also indicated that Smith showed signs of deficits in two areas of adaptive behavior that were adversely affecting her academic performance. Tr. 238. Bernard's conclusion following the evaluation was that Smith would appear to re-qualify for placement in the "Developmentally Handicapped Program." Tr. 238.

2.      **Treating Psychiatric Provider**

Smith testified that she had been treated by Psyche Care in East Liverpool, specifically, Rob Parsons, for approximately ten years. Tr. 53. On March 16, 2007, Robert Parsons, M.S.N., N.P.-C, ("Parsons") of Psyche Care completed a mental status questionnaire. Tr. 310-312. He diagnosed Smith with major depression. Tr. 311. He noted that Smith's flow of conversation and speech was appropriate and her short and long term memory was intact. Tr. 310. He also noted that Smith's ability to remember, understand and follow directions was intact. Tr. 311. Parsons indicated that Smith exhibited moderately severe anxiety, partially impaired insight and judgment, a short attention span, some difficulty maintaining concentration, and poor adaption skills. Tr. 310-311. However, Parsons also indicated that Smith would adequately react to the pressures, in work settings or elsewhere, involved in simple and routine or repetitive tasks. Tr.

---

[9] Mild mental retardation is associated with an IQ in the range of 50-55 to approximately 70. *See* American Psychiatric Association: *Diagnostic & Statistical Manual of Mental Health Disorders*, Fourth Edition, Text Revision. Washington, DC, American Psychiatric Association, 2000 ("DSM-IV-TR"), at 41. Borderline intellectual functioning is associated with an IQ in the range of 71-84. *Id.* at 740.

[10] The IQ test administered was the Weshsler Intelligence Scale for Children-Revised (WISC-R). Tr. 236, 238.

310-311.  Treatment notes from 2005 and 2007 also reflect treatment for major depression and anxiety.  Tr. 313-315.

### 3. Consultative Examining Physician

On April 18, 2008, Claudia E. Johnson Brown, Ph.D., ("Brown") conducted a consultative examination.  Tr. 507.  Smith was referred for an assessment as to her understanding, sustained concentration and persistence, social interaction and adaption.  Tr. 507.  Brown indicated in her report that Smith was seeking disability due to a diagnosis of bipolar disorder.  Tr. 508, 512.  Brown opined that Smith appeared to be of "low average intelligence."  Tr. 512.  She also opined that Smith's ability to concentrate was mildly impaired and her immediate recall and recent memory were moderately impaired while her remote memory appeared significantly impaired.  Tr. 512.  Brown also opined that Smith's judgment appeared poor but her insight in general appeared fair.  Tr. 512.  Brown opined that Smith does not have the ability to withstand normal stressors of the work environment due to mood instability with psychotic features.  Tr. 513.  However, Brown also opined that Smith does have the cognitive ability to perform simple repetitive tasks, and that any limitations on her ability to perform a task would be related to the physical demands of the task not her cognitive ability.  Tr. 513.

### 4. Agency Reviewing Physicians

#### a. *Kevin Edwards, Ph.D.*

On May 10, 2007, Kevin Edwards, Ph.D., ("Edwards") completed a Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment ("MRFC").  Tr. 316-333.  Edwards found no marked limitations.  Tr. 326, 330-333.  He noted Smith's school records from 1984, including the Verbal Scale IQ score of 69 as well as the fact that those school records indicated that Smith exhibited deficits in academic performance and two areas of adaptive

behavior thought to adversely affect academic performance. Tr. 332. Edwards also noted that Smith has a long history of depression and anxiety, periods of panic attacks, and a diagnosis of major depression recurrent with a GAF score of 55.[11] Tr. 332. Edwards noted that Smith was able to do dishes, do laundry, shop, uses public transportation, plays on the weekends, follows oral instructions and gets along well with authority figures and others. Tr. 332. Edwards found that Smith did not meet a Listing. Tr. 316-325. Further, Edwards opined that Smith retains the ability to understand, recall and complete short, routine tasks and can adapt to daily work stress. Tr. 332. Edwards also opined that Smith would do best in an environment that does not require sustained interaction with the general public. Tr. 332.

      **b.** *Tasneem Khan, Ed.D.*

On June 9, 2008, Tansneem Khan, Ed.D., ("Khan") also completed a Psychiatric Review Technique ("PRT") and Mental Residual Functional Capacity Assessment ("MRFC"). Tr. 515-532. Like Edwards, Kahn noted Smith's IQ scores from 1984 when she was fifteen years of age. Tr. 519. Under Listing 12.05, Kahn opined that Smith did not have an impairment that satisfied the diagnostic criteria for Listing 12.05. Tr. 519. Kahn also opined that Smith's impairments did not satisfy any other Listing, specifically referring to Listings 12.04 (Affective Disorders), 12.06 (Anxiety-Related Disorders) and 12.09 (Substance Addiction Disorders). Tr. 515, 518, 520, 523. Kahn found no marked limitations. Tr. 525, 529-530.

Kahn found some of Smith's statements regarding her psychological allegations to be inconsistent. Tr. 532. As an example, he noted that she informed him that she does pick up around the house and has friends, yet she told the consultative examiner that she has no friends

---

[11] GAF considers psychological, social and occupational functioning on a hypothetical continuum of mental health illnesses. DSM-IV-TR at 34. A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.*

6

and her fiancé does all the cleaning. Tr. 532. Because Kahn found most of Smith's other statements to be consistent, Kahn treated Smith's statements as partially credible. Tr. 532. Kahn provided only partial weight to the consultative examiner's opinion because, while the consultative examiner opined that Smith would be unable to withstand stress of a work environment, Smith reported being able to handle the stress of being primarily responsible for the care of her grandson and Kahn noted that a review of Smith's history showed that she could withstand the stress of other daily activities. Tr. 532.

Kahn opined that Smith retained the capacity to learn and perform simple, repetitive work like activities in a static environment where contact with others remains occasional and superficial and she can adapt to a routine in which work related tasks are routine and predictable. Tr. 532.

On August 28, 2008, Karen Terry, Ph.D., ("Terry"), reviewed Kahn's assessments for reconsideration. Tr. 541. Terry indicated that there was "[n]o psych worsening alleged" and she affirmed Kahn's assessment as written. Tr. 541.

**C.  Testimonial Evidence**

**1.  Smith's Testimony**

Smith testified regarding her physical and mental problems and the effect of those problems on her ability to function. Tr. 47-68. Smith indicated that she has problems with her lower back. Tr. 47. Although Smith's doctors recommended back surgery, Smith declined the surgery because of the manner in which her doctors were proposing to perform the surgery, i.e., surgical entry from the front rather than from the back, and because she had been advised that she was too young for the procedure. Tr. 49-50. Smith had injections in 2008 to help with the back pain. Tr. 50-51. She had had a cane. Tr. 52. However, the cane broke and insurance

would only cover one cane per year so she had not been able to replace it. Tr. 51-52. She testified that she has pain and tingling in both legs but most of the pain is on her left side. Tr. 52. Smith indicated that the pain is constant. Tr. 52. She has neck and shoulder pain and some tingling and numbness in her hands. Tr. 52, 55. Medication does help her deal with the symptoms and she does not have any side effects. Tr. 53.

Smith can walk on level ground for about 15-20 minutes. Tr. 54. She can stand for about 5-10 minutes in one spot. Tr. 54. She cannot bend forward but she can squat with some help. Tr. 54. She can sit for approximately 10-15 minutes. Tr. 56. She can use her hands to hold utensils and can do her own laundry. Tr. 55-56.

Smith testified that she has received mental health treatment since her son passed away. Tr. 53. Her depression impacts her memory. Tr. 57. She explained that sometimes she will be on the telephone and, immediately following the phone call, she will not be able to remember who she was talking with. Tr. 57. If something is read to her, she can understand it. Tr. 57. She can watch television and follow the story. Tr. 57. She sometimes gets nervous in crowds if the people are loud or want to get in a fight. Tr. 57-58. Crowds over ten or more people make her nervous. Tr. 58. Smith testified that she was not presently undergoing mental therapy. Tr. 58. In 2007, she was hospitalized once for her mental depression and bipolar disorder. Tr. 58. She indicated that she had tried to overdose by taking too many of her blood pressure pills. Tr. 58. She suffers from severe headaches about three days per week that require her to stay in her bedroom in the dark. Tr. 68.

Smith testified that she does not sleep very well at night. Tr. 62. Except for washing her hair, she is able to take care of her personal hygiene needs. Tr. 62. Her fiancé assists her with washing her hair. Tr. 62. Her fiancé does most of the cooking except for holiday meals. Tr. 62-

63. She is able to do shopping but needs help lifting the groceries in and out of the car. Tr. 65. From approximately 2001 through 2009, she helped care for her grandson and at times was his primary care giver. Tr. 63-64. Smith previously participated in a pool league and walked a lot but no longer did those things. Tr. 65. She testified that she enjoys working on craft projects. Tr. 65.

### 2. Vocational Expert's Testimony

The Court notes that Vocational Expert Eugene Schootzman ("VE") testified at the hearing. Tr. 68-74. However, because Smith's challenge does not relate to the VE's testimony, a summary of the VE's testimony is unnecessary.

### III. Standard for Disability

Under the Act, 42 U.S.C § 423(a), eligibility for benefit payments depends on the existence of a disability. "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Furthermore:

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

42 U.S.C. § 423(d)(2).

In making a determination as to disability under this definition, an ALJ is required to follow a five-step sequential analysis set out in agency regulations. The five steps can be summarized as follows:

1. If the claimant is doing substantial gainful activity, he is not disabled.

9

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity, is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If the impairment does not meet or equal a listed impairment, the ALJ must assess the claimant's residual functional capacity and use it to determine if claimant's impairment prevents him from doing past relevant work. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. If claimant is unable to perform past relevant work, he is not disabled if, based on his vocational factors and residual functional capacity, he is capable of performing other work that exists in significant numbers in the national economy.

20 C.F.R. §§ 404.1520, 416.920; *see also Bowen v. Yuckert*, 482 U.S. 137, 140-42, 96 L. Ed. 2d 119, 107 S. Ct. 2287 (1987). Under this sequential analysis, the claimant has the burden of proof at Steps One through Four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the Residual Functional Capacity ("RFC") and vocational factors to perform work available in the national economy. *Id.*

### IV. The ALJ's Decision

In his March 15, 2010, decision, the ALJ found that Smith had filed numerous prior applications for disability benefits. Tr. 10. For his review, the ALJ combined the then most recently filed application of February 22, 2007, with the December 13, 2007, application. Tr. 10.

The ALJ found that Smith had not engaged in substantial gainful activity since December 13, 2007. Tr. 12.

The ALJ found that Smith has the following severe impairments: disc herniation and plate osteophyte formation resulting in thecal sac compromise at L4-5 in the lumbar spine with

chronic low back pain syndrome; right thoracic outlet syndrome, secondary to cervical rib; degenerative disc disease of the cervical spine; convulsive syncope; bipolar disorder, most recent episode mixed with psychotic features; panic disorder without agoraphobia; borderline intellectual functioning (BIF); and a history of cannabis abuse.  Tr. 12.

The ALJ found that Smith does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.  Tr. 13-14.  The ALJ considered the 1.00 series (musculoskeletal system) and 11.00 series (concerning epilepsy and neurological systems) when considering Smith's impairments.  Tr. 13-14.  The ALJ also considered the 12.00 series (mental disorders), specifically 12.02 (organic mental disorders), 12.04 (affective disorders) and 12.06 (anxiety related disorders).  Tr. 13-14.

The ALJ determined that Smith has the RCF to perform: light work, except with a sit/stand option allowing change of position for ten minutes every hour; unskilled work with no rapid production quota and no piece rate type work; and should not require more than occasional contact with supervisors, co-workers or the public.  Tr. 14-20.

The ALJ found that, based on Smith's RFC and VE testimony, Smith is unable to perform her past relevant work as a nurse's assistant.  Tr. 20.  The ALJ determined claimant to be thirty-nine years of age when she filed the application, i.e., a younger individual age 18-49.  Tr. 20.  The ALJ determined that Smith has a limited education and can communicate in English.  Tr. 20.  The ALJ determined that transferability of job skills was not material.  Tr. 20.  Based on Smith's age, education, work experience, RFC and VE testimony, the ALJ determined that there are jobs in the national and regional economy that Smith can perform in both the light work and sedentary work categories.  Tr. 20-21.  In the light category, the ALJ determined that Smith can perform work as a folding machine operator, mold preparer, and photograph machine operator.

11

Tr. 21. In the sedentary category, the ALJ determined that Smith can perform work as a plastic designer applier, laminator, and painter. Tr. 21.

Based on the foregoing, the ALJ found that Smith is "not disabled" and has not been under a disability since December 13, 2007, the date the application was filed. Tr. 21-22.

### V. Parties' Arguments

#### A. Plaintiff's Arguments

Smith argues that the ALJ should have found her to be disabled under Listing 12.05(C). Doc. 14 at 4-7. She argues that she has a verbal IQ score of 69, established deficits in adaptive functioning, severe impairments that more than minimally limit her employability, and that the IQ score of 69 manifested itself before she reached age 22. Doc. 14 at 4-7.

#### B. Defendant's Arguments

The Commissioner argues that substantial evidence supports the ALJ's decision that Smith is not disabled. Doc. 16 at 6-13. The Commissioner also argues that the ALJ sufficiently considered Smith's intellectual functioning limitations (Doc. 16 at 7-9) and that Smith has failed to show that any alleged lapse in articulation by the ALJ is harmful and constitutes reversible error. Doc. 16 at 9-13.

### VI. Law & Analysis

A reviewing court must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as

12

adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).

The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)). Even if substantial evidence, or indeed, a preponderance of the evidence supports a claimant's position, a reviewing court cannot overturn the Commissioner's decision "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003). Accordingly, a court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

**A.    The ALJ's decision is supported by substantial evidence and the ALJ did not err in failing to find that Smith met or equaled Listing 12.05(C).**

Smith takes issue with the fact that the ALJ did not find that Smith's impairments satisfied Listing 12.05(C). Doc. 14. Listing 12.05 relates to mental retardation. To meet Listing 12.05(C), a claimant has the burden to show the following:

> Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22, [*and*]
>
> . . . .
>
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Part 404, Subpt. P, App. 1, Listing §12.05C (emphasis added).

The Commissioner notes that Smith "did not allege disability due to an intellectual functioning impairment until her brief submitted to this Court" and cites two cases that find such

13

a failure to be relevant on review. Doc. 16 at 12. Smith has not disputed her failure to rely on Listing 12.05 before the SSA.

This case might well be an appropriate instance in which to apply an exhaustion requirement to bar review of Smith's argument based on a Listing that she did not rely on at any level of the administrative review process.[12] However, because the ALJ's decision is supported by substantial evidence and a review of the ALJ's decision reveals that the ALJ did discuss and analyze the evidence appropriately to reach his conclusion that Smith's impairments do not satisfy a Listing, it is unnecessary to decide the issue of whether Smith waived the argument that she now submits to this Court.

The ALJ clearly considered the evidence and applied it to diagnostic criteria under Listing 12.00. Tr. 13-14. Although the ALJ did not specifically refer to Listing 12.05(C) under his Step Three analysis, the ALJ's decision, when viewed as a whole, contains a thorough discussion of the evidence including Smith's physical and mental impairments and her daily activities. Tr. 10-27. This discussion is sufficient to allow for meaningful judicial review and for this Court to determine that no reasonable administrative fact finder would have resolved the matter differently and that remand is not necessary. S*ee Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. April 1, 2011)(determining that an evaluation of the evidence and explained conclusions that allow a court to engage in meaningful judicial review are necessary components of an ALJ's Step Three analysis); s*ee also Hufstetler v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 64298, *26-29 (N.D. Ohio June 17, 2011).

---

[12] In *Sims v. Apfel*, 120 S.Ct. 2080, 2083-2084, 2086 (2000), the Supreme Court held that a claimant's failure to exhaust issues before the SSA's Appeals Council did not bar the claimant from asserting those issues when seeking judicial review but expressly noted that the question of "whether a claimant must exhaust issues before the ALJ" was not before the Court. *Id.* 120 S.Ct. at 2083-2084 (plurality opinion by Justice Thomas). Justice Breyer's dissenting opinion, joined by three other Justices, would have barred consideration of issues not exhausted by the claimant before the Appeals Council.

In his decision, the ALJ specifically found that Smith's activity of caring for her grandchild, from 2001 through 2009, "would require mental and physical functioning well above the limitations resulting in disability." Tr. 16.  This activity along with other daily living activities are discussed and referenced in the ALJ's Step Three analysis as well as throughout the ALJ's decision. Tr. 10-27.  Additionally, the ALJ considered and discussed the consultative examining physician, state agency reviewing physicians and treating source reports. Tr. 13-20. Smith's own psychiatric treatment provider, Parsons, did not diagnose Smith with mental retardation. Tr. 311.  Parsons diagnosed Smith with major depression and, despite his opinion that Smith had poor adaption skills, Parsons opined that Smith would be able to adequately react to pressures in a work setting, or elsewhere. Tr. 311.  The ALJ gave Parsons' report great weight. Tr. 17.

Smith relies on a 1984 Verbal IQ test score of 69 to argue that she satisfies diagnostic criteria under Listing 12.05(C). Doc. 14 at 4-7; Tr. 236.  The ALJ did consider this 1984 evidence (Tr. 19) and the ALJ gave great weight to Dr. Khan's opinions which included an evaluation of the 1984 evidence. Tr. 17, 515-532.  In his report, Dr. Kahn opined that Smith did not have an impairment that satisfied the diagnostic criteria for Listing 12.05. Tr. 519.  He determined that Smith had BIF (borderline intellectual functioning),[13] an impairment, as noted by Dr. Kahn that does not precisely satisfy the diagnostic criteria of 12.05(C). Tr. 519.

Notwithstanding that the burden of proof rested with Smith at Step Three,[14] Smith has not submitted current IQ test scores to the ALJ nor has she pointed to any diagnosis of mental retardation to support her argument that she is mentally retarded.  Inasmuch as the one IQ test

---

[13] At Step Two, the ALJ did find that one of Smith's severe impairments was borderline intellectual functioning. Tr. 12. There is a distinction between a diagnosis of mental retardation and borderline intellectual functioning.  *See Cooper v. Comm'r of Soc. Sec.*, 217 Fed Appx. 450, *452 (6th Cir. 2007).

[14] *See Walters*, 127 F.3d at 529.

score that Smith relies upon was obtained when she was fifteen years of age, said test score is insufficient to establish that Smith meets Listing 12.05(C).  See *Elam v. Comm'r of Soc. Sec.*, 348 F.3d 124, 126 (6th Cir. 2003) (finding that intelligence test results obtained between the ages of seven and sixteen are considered to be current for only two years if the score is forty or above.)  Even if Smith's one test score from 1984 is considered to be substantial evidence, the Commissioner's decision should not be overturned "so long as substantial evidence also supports the conclusion reached by the ALJ."  *Jones*, 336 F.3d at 477.

    Furthermore, Smith's testimony from 2010 demonstrates that the 1984 Verbal IQ test result of 69 does not accurately reflect Smith's verbal abilities today.  Dr. Bernard's narrative report specifically noted that there was an 18 point discrepancy between Smith's Verbal and Performance Scale IQs on the 1984 test.  Tr. 238.  He opined that the discrepancy "suggests that her [Smith's] perceptual organizational skills are currently significantly better developed than her skills of verbal comprehension."  Tr. 238.   While Smith's verbal comprehension skills may have been impaired in 1984, at the hearing in 2010, Smith's own testimony demonstrates that her verbal comprehension abilities were not impaired.  Tr. 57.  Smith testified that if something is read to her she can understand it.  Tr. 57.  Additionally, she testified that she can watch television and follow the story.  Tr. 57.

    The foregoing demonstrates that Smith did not satisfy her burden and further that there is substantial evidence to support the ALJ's decision.

    The Commissioner also argues that any alleged lapse in articulation by the ALJ is harmless because the record as whole does not support Smith's argument that she satisfies Listing 12.05(C).  Doc. 16 at 9-11.  The undersigned agrees.  A court is not precluded from applying harmless error to uphold Step Three findings.  See *Fischer-Ross v. Barnhart*, 431 F.3d

729, 733 (10th Cir. 2005) (finding that *Clifton v. Chater*, 79 F.3d 1007 (10th Cir. 1996) did not categorically reject the application of harmless error analysis in the context of a Step Three finding); *see also Hufstetler*, 2011 U.S. Dist. LEXIS at 26-27.

     Here, even if the ALJ's analysis at Step Three was determined to be lacking, because it does not include a specific reference to Listing 12.05(C), said omission would be harmless error because the ALJ's findings at Step Four provide sufficient information for this Court to determine that no reasonable administrative fact finder would have resolved the matter differently. *See Hufstetler*, 2011 U.S. Dist. LEXIS at 26-29. Further, the ALJ's decision as a whole provides findings that Smith's impairments do not satisfy a Listing and that Smith is not disabled. *See Malone v. Comm'r of Soc. Sec.*, 2011 U.S. Dist. LEXIS 130537, *4-6 (N.D. Ohio November 10, 2011) (finding that, based on a review of the ALJ's decision as a whole, remand was not necessary even though the ALJ's decision contained only a conclusory statement regarding step three). The ALJ did consider the IQ scores from 1984, medical opinions that did not include diagnoses of mental retardation, and an abundance of evidence regarding Smith's work and daily activities. Even if the ALJ's analysis at Step Three was determined to be lacking, any such lapse in articulation would be harmless error. The ALJ, having considered and analyzed all of the evidence presented in Smith's disability claim, reached a reasoned decision that has allowed for meaningful judicial review.

## V. Conclusion and Recommendation

For the foregoing reasons, the undersigned finds that the ALJ applied the correct legal standards and that the ALJ's decision is supported by substantial evidence.  Therefore, it is the undersigned's recommendation that the Commissioner's decision be **AFFIRMED**.

Dated: February 8, 2012

Kathleen B. Burke
United States Magistrate Judge

## **OBJECTIONS**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).